**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**LUIS GUSTAVO DIAZ,**

**Petitioner,**

**v.** **Civil No. 2:25cv499**
**Criminal No. 2:24cr28-7**

**UNITED STATES OF AMERICA,**

**Respondent.**

**OPINION AND ORDER**

This matter is before the Court on Petitioner Luis Gustavo Diaz's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF Nos. 302, 309, 363. The Court has weighed the testimony and other evidence presented at the July 13, 2026, evidentiary hearing, and has considered the arguments advanced by Petitioner and the Government in light of such evidence. For the following reasons, one of Petitioner's remaining claims is **DISMISSED** as moot, and the other two remaining claims are **DENIED**.

## I. BACKGROUND

As explained in the Court's prior Opinion and Order, ECF No. 372, Petitioner, a Cuban citizen and legal permanent resident of the United States, was indicted in April 2024 on charges of Racketeer Influenced and Corrupt Organizations (RICO) Conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One), and Conspiracy to

Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(A)(ii) and (h) (Count Two). ECF No. 1.

On December 6, 2024, Petitioner pleaded guilty to Count One. ECF Nos. 174-76, 350. Petitioner's written plea agreement included a waiver of Petitioner's right to appeal his "conviction and any sentence within the statutory maximum . . . (or the manner in which that sentence was determined)," with an exception for "an ineffective assistance of counsel claim that is cognizable on direct appeal." ECF No. 175 ¶ 5. The plea agreement also explained that a RICO Conspiracy conviction would make Petitioner's "removal" from the United States "presumptively mandatory." Id. ¶ 14.

On April 18, 2025, another judge of this Court imposed a sentence of 38 months of imprisonment and three years of supervised release. ECF No. 253, at 1-3. This sentence represented a substantial downward variance from the advisory Sentencing Guidelines range. See ECF No. 255, at 24:12-15. Petitioner did not directly appeal his conviction or sentence. ECF No. 309, at 3. But in August 2025, he moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Petitioner's § 2255 motion initially raised three main claims of ineffective assistance by his former retained counsel, Ms. Lana Manitta: "failure to object to [the] sophisticated means enhancement" (Ground One); "failure to cite applicable authority

for credit for time served in California" (Ground Two); and "failure to fulfill duty to consult regarding direct appeal" (Ground Three). ECF No. 309, at 5-7. Petitioner also alleged that his former counsel's "failure to investigate" his criminal history and "review [character] letters" constituted ineffective assistance (Ground Four). ECF No. 302, at 10. The Court later permitted Petitioner to amend his § 2255 motion to raise another ineffective-assistance claim, alleging that his counsel "failed to advise him regarding the immigration consequences of a guilty plea" (Ground Five). ECF No. 363, at 1 (citing Padilla v. Kentucky, 559 U.S. 356 (2010)).

In an Opinion and Order issued April 21, 2026, the Court denied two of Petitioner's claims for relief and took his three remaining claims — Grounds Two, Three, and Five — under advisement pending supplemental briefing and an evidentiary hearing. ECF No. 372. The parties filed supplemental briefs, ECF Nos. 356, 395, and the hearing, at which Petitioner appeared with counsel, was held on July 13, 2026, ECF No. 397. A qualified, sworn Spanish-language interpreter was present throughout the hearing. See ECF No. 397. Petitioner and the Government filed post-hearing briefs on August 3, 2026. ECF Nos. 399, 400. The matter is now ripe for disposition.

## II. LEGAL STANDARD

A federal prisoner may collaterally challenge his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must establish by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States"; the district court "was without jurisdiction to impose such sentence"; the sentence exceeds "the maximum authorized by law"; or the sentence or conviction is "otherwise subject to collateral attack." Id.; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

Although the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised "during [the] initial criminal proceeding or on direct appeal," United States v. McKinney, 60 F.4th 188, 193 (4th Cir. 2023), the doctrine does not bar a constitutional claim that defense counsel provided ineffective assistance in contravention of the accused's Sixth Amendment "right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI; see Massaro v. United States, 538 U.S. 500, 504 (2003).

"To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation 'fell below an objective standard of reasonableness,'" and "(2) that 'the deficient performance prejudiced the defense.'" United States v.

Cooper, 617 F.3d 307, 312 (4th Cir. 2010) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). A failure to prove either of these Strickland prongs is dispositive. Moore v. Hardee, 723 F.3d 488, 500 (4th Cir. 2013).

The first Strickland prong, performance, requires a petitioner to overcome a "'strong presumption' that counsel's decisions were within the broad spectrum of reasonableness." Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 689). Only in "relatively rare situations" will a § 2255 motion establish that "the identified acts or omissions were outside the wide range of professionally competent assistance." Id. (quoting Strickland, 466 U.S. at 690). As it is all too easy to challenge counsel's conduct once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

Under the second Strickland prong, prejudice, a petitioner must "affirmatively prove prejudice" by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. When a petitioner claims ineffective assistance in connection with his entry of a guilty plea, the petitioner must demonstrate "a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

## III. ANALYSIS

Of the five grounds for relief advanced in Petitioner's § 2255 motion, three remain to be decided: Grounds Two, Three, and Five. See ECF No. 372. The Court addresses each in turn.

### A. Ground Two: Credit For Time Served

Ground Two challenged counsel's alleged "failure to cite applicable authority for credit for time served in California." ECF No. 309, at 6. As a result, Petitioner claims, the Judgment did not specifically reference some 72 days that Petitioner had previously served in California custody. Id.; see ECF No. 395, at 6. The Judgment did, however, provide that "THE DEFENDANT SHALL RECEIVE CREDIT FOR TIME SERVED." ECF No. 253, at 2.

In Petitioner's supplemental brief prior to the hearing, Petitioner maintained that trial counsel's lack of preparation ultimately deprived Petitioner of "credit that [he] was unequivocally entitled to." ECF No. 395, at 6. But Petitioner acknowledged that, in light of his then imminent release, relief on this claim was "impossible." Id. And in his post-hearing brief, Petitioner states that the "issue has been rendered moot by the passage of time," such that Petitioner no longer requests relief on this ground. ECF No. 400, at 5. Meanwhile, the

Government argues that Petitioner has failed to prove either Strickland prong and that, in any case, the Court lacks the authority to determine time-served credit, such determination being reserved to the Bureau of Prisons. ECF No. 399, at 4-5.

While in some circumstances a released defendant may later benefit from "banked time," United States v. Jackson, 952 F.3d 492, 497-98 (4th Cir. 2020), contemplating that possibility here would take the Court "into the area of speculation and conjecture," O'Shea v. Littleton, 414 U.S. 488, 497 (1974); see Caldwell v. Weber, No. 1:21cv852, 2024 WL 112011, at *4 (D. Md. Jan. 9, 2024) (discussing the possible mootness of a released petitioner's claims related to time credits). "Because [Petitioner] has already served his term of imprisonment and has not identified any collateral consequences of it" in relation to his claim for time-served credit, "there is no longer any live controversy regarding the length of his confinement" and "his challenge regarding additional credit against his sentence is moot." Paternoster-Cozart v. Clarke, 603 F. App'x 218, 219 (4th Cir. 2015) (unpublished). Ground Two is thus **DISMISSED as moot**.

**B. Ground Three: Consultation Regarding Direct Appeal**

Ground Three challenged trial counsel's alleged failure to consult with Petitioner about the prospect of filing a direct appeal following Petitioner's sentencing. ECF No. 309, at 7.

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Cooper, 617 F.3d at 313 (quoting Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000)). When the Fourth Circuit "has found a breach" of this duty, it has "usually" been "because the defendant said something to his counsel indicating that he had an interest in appealing." Id. (collecting cases). But here, Petitioner failed to demonstrate such an interest to his counsel.

It is undisputed that Petitioner asked counsel (via Petitioner's fiancée) "to pursue any and all remedies available to [him] to obtain a sentence reduction." ECF No. 301; see ECF No. 399, at 5. According to Petitioner's testimony at the evidentiary hearing, that request was intended to convey Petitioner's desire "to file an appeal." ECF No. 398 ("Hearing Tr."), at 70:16-72:8. But Petitioner admitted that he "never specifically told" counsel, "let's do an appeal." Id. at 71:8-18.

Petitioner attributed this omission to his lack of "familiar[ity] specifically with the term appeal." Id. at 71:11. He further testified that, as of the day of his sentencing, he did not "know what a notice of appeal was" and had not "ever heard

that phrase." Id. at 74:5-9. But at the sentencing hearing, the presiding judge had just advised Petitioner of his appellate rights and indicated that, to appeal his sentence, Petitioner would "have to file a notice of appeal." ECF No. 255, at 46. And much earlier, Petitioner's plea agreement, each page of which Petitioner initialed, included an appellate waiver that specifically referenced Petitioner's "right to appeal." ECF No. 175 ¶ 5. At the plea hearing, Petitioner affirmed that he had signed and understood the plea agreement and that, as a result of his plea agreement, it would be "very difficult to appeal [his] sentence." ECF No. 350, at 7:5-8:3.

Petitioner has identified no "extraordinary circumstances" to undermine the "truth of" his prior "sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). And at the evidentiary hearing, the testimony of his former counsel, Ms. Manitta, was consistent with those statements. Ms. Manitta testified that she "explain[ed] the right to appeal, the waiver issue, and" the "process . . . to file an appeal," advising that she would "file a notice of appeal" if he "let [her] know" that he wanted to appeal. Hearing Tr. at 127:3-19. But despite these discussions, Petitioner "didn't ask" Ms. Manitta to note an appeal, and she "never got a message" from Petitioner or his family "to note an appeal." Id. at 204:5-12 ("[I]n fact, when he did start

e-mailing me [after sentencing] I don't even remember him raising that in his initial angry tirade e-mails with me.").

The Court credits Ms. Manitta's testimony on this issue. Within the context of her representation of Petitioner, including her prior advice regarding the likely futility of any direct appeal, see id. at 127:16-19, the Court finds by a preponderance of the evidence that Petitioner's inquiry regarding whether "there [was] something that could be done with the decision that the judge made," Hearing Tr. at 72:4-5, was neither intended nor received as an indication that Petitioner "had an interest in appealing," Cooper, 617 F.3d at 313, as opposed to an interest in pursuing potential relief via avenues not foreclosed by his appeal waiver.

Nor would "a rational defendant" in Petitioner's position have "want[ed] to appeal," id., given the appellate waiver (which applied to both his sentence and his conviction) and the below-Guidelines sentence Petitioner received, see ECF No. 175 ¶ 5; ECF No. 253. Petitioner does not identify any "nonfrivolous grounds for appeal" that "reasonably observant counsel would have noticed." Cooper, 617 F.3d at 314; cf. United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006) (explaining that an ineffective-assistance claim is "unreviewable" on direct appeal unless the record "conclusively" shows "constitutional ineffectiveness"). On this record, Ms. Manitta was not "constitutionally ineffective . . . in failing to consult with

[Petitioner] about the possibility of taking an appeal." Id. at 315.

Furthermore, even if Ms. Manitta had failed to "fulfill h[er] consultation obligations," Petitioner has not shown Strickland prejudice, which would only be presumed in such a case "if the defendant c[ould] show that, had he received reasonable advice from his attorney, he would have instructed his attorney to file a timely notice of appeal." United States v. Poindexter, 492 F.3d 263, 268-69 (citing Flores-Ortega, 528 U.S. at 486). Here, the evidence showed that, given the absence of any apparent nonfrivolous grounds for appeal, Ms. Manitta's reasonable advice would have been — and in fact was, according to Petitioner's own testimony — to pursue alternatives to appeal, such as "a 2255 based on insufficiency by the attorney." Hearing Tr. at 51:6-11; see also id. at 127:3-19 (Ms. Manitta testifying to her practice of "explain[ing] the right to appeal, the waiver issue," and "what's going to happen if [an appeal is] outside the parameters of what [the defendant] agreed to" in the appellate waiver).

Because Petitioner has failed to carry his burden to establish either constitutionally deficient performance or prejudice, see Moore, 723 F.3d at 500, Ground Three is **DENIED**.

**C. Ground Five: Advice Regarding Immigration Consequences**

Petitioner's final claim, Ground Five, challenged counsel's alleged "fail[ure] to advise him regarding the immigration consequences of a guilty plea." ECF No. 363, at 1.

Because Petitioner is not a U.S. citizen, his conviction on Count One, an "aggravated felony," renders him "subject to mandatory deportation." Lee v. United States, 582 U.S. 357, 360-62 (2017); see 8 U.S.C. §§ 1101(a)(43)(J), 1227(a)(2)(A)(iii). Counsel would render ineffective assistance if she failed to advise him of that consequence or gave him "'false assurance' that the conviction would not result in [his] removal from the country." United States v. Swaby, 855 F.3d 233, 240 (4th Cir. 2017) (emphasis added) (citing Padilla, 559 U.S. at 368-69).

"Critically," however, "being 'subject to mandatory deportation' does not mean that the noncitizen defendant will absolutely be deported or even absolutely be found deportable." United States v. Murillo, 169 F.4th 273, 287 (4th Cir. 2026). For example, a noncitizen "may avoid deportation based on 'the executive's prerogative whether to actually remove a human being from the United States.'" Id. (citation omitted). Accordingly, counsel for a defendant who pleads guilty to "a crime that would render him deportable" must advise the defendant "that his plea would carry a risk of deportation by rendering him deportable," but need not specifically "use the terms 'mandatory deportation'

or 'presumptively mandatory deportation,'" especially if such terms would "mislead a noncitizen defendant to believe that deportation would be a certainty." Id.

Here, Petitioner contends that he received ineffective assistance of counsel because he (1) "was never informed that he would be 'subject to deportation'" and (2) was given "false and extra-legal political assurances" that, as a Cuban national, he would not be deported. ECF No. 400, at 16, 24. Neither of these contentions favors the relief Petitioner seeks.

Ms. Manitta credibly and unequivocally testified that she had reviewed in detail with Petitioner the plea agreement's provision regarding immigration consequences. Hearing Tr. at 127:20-22; id. at 176:22-177:3. She affirmed that she and Petitioner had discussed "a number of times . . . that the offense was a deportable offense" since it fell within the "category of the aggravated felony." Id. at 128:15-129:12. Petitioner "didn't express doubt" and "wasn't confused about" the fact "that this was a deportable offense." Id. at 129:14-18; see id. at 176:9-10 ("[Petitioner] knew that he had a deportable offense. We discussed it more than once.").

Petitioner admitted at the evidentiary hearing that Ms. Manitta had "advised that [he] could have immigration consequences" if he pleaded guilty, id. at 64:25-65:3, but he maintained that Ms. Manitta had "[n]ever" told him that his plea

"would result in mandatory deportation," id. at 37:21-23. Here again, Petitioner's testimony at the evidentiary hearing was in conflict with his own prior "sworn statements," Lemaster, 403 F.3d at 221-22, affirming that he had signed and understood the plea agreement, which his lawyer had "explain[ed] to" him. See ECF No. 350, at 7:5-8:3. That plea agreement provided that Petitioner's RICO Conspiracy conviction would "make it such that removal is presumptively mandatory." ECF No. 175 ¶ 14; see also ECF No. 350, at 11:24-12:3 (Petitioner affirming that he understood that his plea "possibly mean[t] that at some point in the future, [he] will be deported from the country").

Against Petitioner's self-contradiction, the Court credits Ms. Manitta's testimony and finds it more likely than not that she correctly advised Petitioner "that his plea would carry a risk of deportation by rendering him deportable," thereby affording Petitioner effective assistance even if counsel did not specifically "use the terms 'mandatory deportation' or 'presumptively mandatory deportation'" in doing so. Murillo, 169 F.4th at 287; see Hearing Tr. at 128:15-129:12.

The Court further finds that Ms. Manitta did not vitiate her correct advice by providing Petitioner with any "false assurance." Swaby, 855 F.3d at 240 (emphasis added) (citing Padilla, 559 U.S. at 368-69). Petitioner testified that Ms. Manitta told him "not to worry about" immigration consequences "because Cubans were not

being deported." Hearing Tr. at 58:10-13; id. at 86:5-10. But Ms. Manitta recalled giving more nuanced advice, noting that Petitioner "would be subject to deportation" but, as a Cuban national, "could have a deportation order and be here for years." Id. at 173:24-174:13; id. at 176:14-177:9 (testifying that deportation to Cuba had been unlikely "for quite some time" prior to the change in presidential administration that occurred the month after his sentencing hearing). Ms. Manitta testified that the Government's approach changed only after Petitioner had already pleaded guilty.[1] Id. at 189:12-20. Indeed, when Ms. Manitta observed at sentencing that Petitioner was "in danger of deportation," the presiding judge himself evinced some surprise, for he too had previously understood that the Government would "not send[] [Petitioner] back to Cuba." ECF No. 255, at 33:3-20.

The Fourth Circuit has declined to require defense attorneys to give their clients "excessively dire warnings" that could "coerce[]" them "into going to trial when in fact, pleading guilty is their best option." Murillo, 169 F.4th at 288 (quoting United States v. Cazarez-Santos, 66 F. Supp. 3d 1301, 1309 (S.D. Cal. 2014)). It has also indicated that attorneys are not constitutionally required either to blind themselves or their clients to the practical reality of executive forbearance or to

[1] The Government agrees its "stance on the deportation of Cubans to Cuba has substantially changed since the Petitioner entered his guilty plea," marking "a sudden change in years-long policy," ECF No. 399, at 12-13.

predict with perfect certainty — an "impossible" task — the reversal of such forbearance. Id. at 281, 288 (noting a "lack of certainty" regarding the exercise of "the government's discretion to execute a deportation" (citation omitted)). Instead, counsel for a defendant who pleads guilty to "a crime that would render him deportable" must advise the defendant "that his plea would carry a risk of deportation by rendering him deportable." Id. at 287. The preponderance of the evidence before the Court, outlined above, shows that Ms. Manitta satisfied that obligation. Her decision to couple her warning about Petitioner's "deportable" status with additional, non-contradictory advice — reasonable at the time — regarding the practical likelihood of Petitioner's deportation was likewise "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In light of Petitioner's failure to demonstrate deficient performance under Strickland, the Court need not consider the issue of prejudice. Moore, 723 F.3d at 500. Ground Five is **DENIED**.

**D. Conclusion**

For the foregoing reasons, Ground Two of Petitioner's § 2255 motion is **DISMISSED as moot** and Grounds Three and Five are **DENIED**. ECF Nos. 302, 309, 363.

The Court **GRANTS** a certificate of appealability as to Ground Five, finding the denial thereof to be "debatable amongst jurists of reason." Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003);

28 U.S.C. § 2253(c); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). Petitioner is **ADVISED** that, in order to appeal the denial of Ground Five, a timely notice of appeal must still be filed. Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(b); Fed. R. App. Proc. 4.

The Court **DENIES** a certificate of appealability as to all other Grounds. Petitioner is further **ADVISED** that, as to grounds for which this Court denies a certificate of appealability, he may seek such a certificate from the Fourth Circuit **within sixty (60) days** from the date of this Opinion and Order by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Fed. R. App. Proc. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a).

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ [signature]
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 1, 2026